# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **LISA I. GRUBB,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv00016 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security**, | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the ALJ for further findings consistent with this Memorandum Opinion.

*I. Background and Standard of Review*

Plaintiff, Lisa I. Grubb, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2007).  Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Grubb filed a prior SSI application on June 30, 1997, alleging disability as of June 30, 1996. (Record, ("R."), at 19.) After an administrative hearing, that claim was denied by decision rendered on January 29, 1999. (R. at 19.) Grubb filed a second SSI application on April 13, 1999, again claiming disability since June 30, 1996. (R. at 19.) On October 22, 1999, the claim was denied at the initial level without further appeal. (R. at 19.) Grubb's third SSI application, filed on January 14, 2002, claimed disability since February 5, 1999. (R. at 19.) That claim also was denied at the initial level without further appeal on June 13, 2002. (R. at 19.)

The record shows that Grubb filed her current application for SSI on April 15, 2005, alleging disability as of March 11, 2005, based on diabetic sensory polyneuropathy, diabetes, back problems, underactive thyroid, hypertension,

depression and anxiety.[1] (R. at 57-61, 67.) Grubb's claim was denied both initially and on reconsideration. (R. at 33-35, 39, 41-43.) Grubb then requested a hearing before an administrative law judge, ("ALJ"). (R. at 44.) The ALJ held a hearing on March 8, 2006, at which Grubb was represented by counsel. (R. at 333-67.)

By decision dated July 26, 2006, the ALJ denied Grubb's claim. (R. at 19-28.) The ALJ found that Grubb had not engaged in substantial gainful activity since March 11, 2005. (R. at 22.) The ALJ found that the medical evidence established that Grubb had severe impairments, namely diabetes mellitus, poorly controlled with neuropathy/numbness in the extremities, a history of macular edema and diabetic retinopathy, mild edema, mild hypertension, renal insufficiency, obesity and mild anxiety/depression, but he found that Grubb did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ further found that Grubb's allegations regarding her symptoms were not totally credible. (R. at 23.) The ALJ found that Grubb had the residual functional capacity to perform work at the light[2] to medium[3] exertional levels that allowed for the ability to lift items weighing up to 50

---

[1] Neither depression nor anxiety was listed in Grubb's Disability Report or Disability Report Appeal. (R. at 67-73, 93-99.) However, at her March 8, 2006, hearing and in her summary judgment brief, Grubb alleged disability due to both depression and anxiety. (R. at 349, 353-55.)

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2007).

[3] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. § 416.967(c) (2007).

-3-

pounds occasionally and up to 20 pounds frequently, but that she required a sit/stand option. (R. at 23.) He further found that Grubb could sit, stand and/or walk for a total of six hours in an eight-hour workday, but that she could not repetitively reach, nor could she push and/or pull. (R. at 23.) The ALJ also found that Grubb could occasionally kneel, climb and crawl, but should avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. (R. at 23.) Thus, the ALJ concluded that Grubb could return to her past relevant work as a house (night) monitor, a housekeeper or a food service worker. (R. at 27.) Therefore, the ALJ concluded that Grubb was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 27-28.) *See* 20 C.F.R. § 416.920(f) (2007).

After the ALJ issued his opinion, Grubb pursued her administrative appeals, (R. at 15), but the Appeals Council denied her request for review. (R. at 9-12.) A request for reopening was filed on February 17, 2007, but was denied by the Appeals Council on February 23, 2007. (R. at 6-7.) Grubb then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2007). The case is before this court on Grubb's motion for summary judgment filed July 27, 2007, and the Commissioner's motion for summary judgment filed September 27, 2007.

## II. Facts[4]

Grubb was born in 1969, (R. at 58), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has a high school education and past relevant work experience as a house (night) monitor, a housekeeper, a deli worker and a salad bar worker. (R. at 68-69, 72, 85-89, 336.)

Grubb testified at her hearing that she was employed as a night monitor at a children's home for approximately four and a half years and spent most of her time sitting except when she had to walk during her rounds. (R. at 339-40.) She testified that she was terminated from that job because her blood sugar levels would drop and the rescue squad would be called three or four times a month. (R. at 341.) Previously, she worked as a housekeeper for approximately six months, but she quit because using her hands and standing bothered her. (R. at 341.) Grubb testified that she also worked as a deli worker from 1996 to 1997 and was unemployed from 1997-1999. (R. at 342.)

Grubb testified that she did not get out of bed most days because she suffered from depression. (R. at 349.) She stated that she had a difficult time leaving the house and struggled with her memory. (R. at 350.) Grubb stated that she missed 10 to 12 days monthly while she was working as a night monitor due to her low blood sugar levels. (R. at 352.) She further testified that she had crying spells, trouble

---

[4]Because Grubb's arguments on appeal challenge only the ALJ's findings with regard to her alleged mental impairments, the only facts contained in this Memorandum Opinion are those relevant to the ALJ's findings related thereto. Any other facts contained in the Memorandum Opinion are for clarity of the record only.

concentrating, trouble sleeping, panic attacks and difficulty dealing with noise and crowds. (R. at 353-55.)

John Newman, a vocational expert, also was present and testified at Grubb's hearing. (R. at 356-65.) Newman was asked to consider a hypothetical individual of Grubb's age, education and work history, who suffered from diabetes with neuropathy, mild macular edema and mild renal insufficiency, who could perform medium daytime shift work, limited by an ability to stand, walk and sit for six hours each, but who could not work around heights or hazards. (R. at 358.) Newman stated that such an individual would be able to perform Grubb's past relevant work as a motel housekeeper, which he classified as light and unskilled. (R. at 358.) Newman was asked to consider the same hypothetical individual who, when seated, must elevate the legs, but not to the therapeutic level. (R. at 359.) Newman testified that this individual would not be able to perform the housekeeping job because it did not allow for sitting. (R. at 360.) In a third hypothetical, Newman was asked to consider an individual who was limited to light work and could kneel, climb and crawl only occasionally. (R. at 360.) Newman testified that the individual could perform the housekeeping job. (R. at 360.) Then Newman was asked to consider that same hypothetical individual, but who would need to avoid repetitive pushing, pulling and reaching, as well as prolonged walking and standing. (R. at 361.) Newman testified that such an individual would be unable to perform any of Grubb's past work, but could perform the sedentary[5] jobs of a cashier and an assembler. (R. at 361.) In a fifth hypothetical, Newman was asked to consider the same individual who was unable to

---

[5]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles such as docket files, ledgers and small tools. *See* 20 C.F.R. § 416.967(b) (2007).

leave bed most days because of a depressed mood or fatigue. (R. at 361.) Newman testified that the individual would be unable to perform any job. (R. at 361.) Newman also explained that the jobs he described were all full-time positions and that he considered anything more than one absence per month excessive absenteeism. (R. at 362-64.) Newman was next asked to consider another hypothetical individual who had to elevate her feet to the therapeutic level during the day. (R. at 364.) Newman testified that elevating the feet to the therapeutic level, meaning at least as high as the heart, would place the individual in a reclining posture and, therefore, would eliminate any competitive employment. (R. at 364.)

In rendering his decision, the ALJ reviewed records from Wythe County Community Hospital; Wythe Medical Associates, Inc.; Dr. Kyoung Cho, M.D.; Dr. William Humphries, M.D.; Dr. Amanda Brewer-Smith, O.D.; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Shirish Shahane, M.D., a state agency physician; Dr. William B. Baker, M.D.; Dr. Robert Brownlow Jr., M.D.; Doreen Nally, Psy.D., a licensed clinical psychologist; Robert W. Smith, Ph.D., a licensed clinical psychologist; and Karen Heinbockel, Psy.D. Grubb's attorney submitted additional medical records from Wythe County Community Hospital, Wythe Medical Associates, Inc., Dr. Donald Zedalis, M.D., and Dr. Baker to the Appeals Council.[6]

On April 7, 2006, Doreen Nally, Psy.D., and Robert W. Smith, Ph.D., both licensed clinical psychologists, evaluated Grubb at the request of Disability

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 9-12), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Determination Services. (R. at 240-44.) Grubb complained of depression, anxiety and lack of desire to leave her home. (R. at 240.) Grubb stated that she had not received any treatment for depression or anxiety. (R. at 241.) Grubb's mood was sad, and she reported chronic suicidal ideation with no intent. (R. at 242.) Nally and Smith noted that Grubb appeared to be honest about her psychiatric symptoms because her self-report was consistent with her presentation. (R. at 243.) Nally and Smith assessed a Global Assessment of Functioning, ("GAF"), score of 50[7] and diagnosed major depressive disorder, recurrent, moderate. (R. at 243.) Nally and Smith rated Grubb's prognosis as fair. (R. at 243.) They concluded that Grubb was capable of performing detailed and complex tasks, as well as simple and repetitive tasks, accepting instructions from supervisors, interacting appropriately with co-workers and the public and performing work activities consistently as long as they did not worsen her pain. (R. at 243-44.) However, Nally and Smith stated that Grubb would have difficulty maintaining regular attendance and that her depression would make handling highly stressful work situations difficult. (R. at 244.)

Later that month, Nally and Smith completed a mental assessment, finding that Grubb was moderately limited in her abilities to perform activities within a schedule, maintain regular attendance and be punctual and to respond appropriately to work pressures in a usual work setting. (R. at 245-47.) In all other areas of work-related mental functioning, they found no limitations. (R. at 245-46.)

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health–illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 41 to 50 indicates "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning. ..." DSM-IV at 32.

Grubb saw Karen Heinbockel, Psy.D., on April 20 and April 28, 2006. (R. at 271-74.) Grubb stated that she suffered from depression since 2000 and that her condition had worsened since losing her job. (R. at 271.) Grubb also complained of anxiety and auditory hallucinations. (R. at 271.) Heinbockel diagnosed Grubb with major depressive disorder, severe, with psychotic features. (R. at 272.) Heinbockel's note from April 28, 2006, indicates that she would meet with Grubb twice a week. (R. at 274.)

Dr. Chimer D. Moore Jr., M.D., conducted a sleep study on July 10, 2006. (R. at 295-96, 317-18.) Dr. Moore concluded that Grubb had severe obstructive sleep apnea, associated with moderate nocturnal hypoxemia, early rapid eye movement, ("REM"), latency, often associated with significant depression, and sleep onset and sleep maintenance insomnia. (R. at 296.) He recommended that Grubb consider continuous positive airway pressure, ("CPAP"), titration. (R. at 296.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

does not proceed to the next step.  *See* 20 C.F.R. § 416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy.  *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West  2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 26, 2006, the ALJ denied Grubb's claim.  (R. at 19-28.) The ALJ found that the medical evidence established that Grubb had severe impairments, namely diabetes mellitus, poorly controlled with neuropathy/numbness in the extremities, a history of macular edema and diabetic retinopathy, mild edema, mild hypertension, renal insufficiency, obesity and mild anxiety/depression, but he found that Grubb did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.)  The ALJ found that Grubb had the residual functional capacity to perform work at the light to medium exertional levels that allowed for the ability to lift items weighing up to 50 pounds occasionally and up to 20 pounds frequently, but that she required a sit/stand option.  (R. at 23.)  He further found that Grubb could sit, stand and/or walk for a total of six hours in an eight-hour workday, but that she could not repetitively reach, nor could she push and/or pull.  (R. at 23.)  The ALJ also found that

Grubb could occasionally kneel, climb and crawl, but should avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. (R. at 23.) Thus, the ALJ concluded that Grubb could return to her past relevant work as a house (night) monitor, a housekeeper or a food service worker. (R. at 27.) Therefore, the ALJ concluded that Grubb was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 27-28.) *See* 20 C.F.R. § 416.920(f) (2007).

In her brief, Grubb argues that the ALJ erred by failing to consider all of her impairments in combination. (Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-10.) Grubb also argues that the ALJ erred by failing to give full consideration to the findings of psychologists Nally and Smith. (Plaintiff's Brief at 10.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical

-11-

evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Grubb argues that the ALJ erred by failing to consider the combination of all of her impairments and their resulting effect on her work-related abilities. (Plaintiff's Brief at 8-10.) More specifically, she contends that the ALJ erred by failing to fully consider the findings of psychologists Nally and Smith and the resulting effects of her mental impairments on her ability to work. (Plaintiff's Brief at 9-10.) Based on my review of the ALJ's decision, I first find that Grubb's argument that the ALJ failed to consider the cumulative effect of all of her impairments to be without merit. The Fourth Circuit has held that it "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. ... [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). It is clear from the ALJ's decision that he did consider Grubb's impairments in combination. For instance, although he specifically found that "the claimant has evidenced no independently 'severe,' medically determinable psychological impairment during the period at issue that has persisted for at least 12 consecutive months[,]" he also listed "mild anxiety/depression" as one of Grubb's medically

-12-

determinable impairments that, "either individually or in combination, are 'severe. ...'" (R. at 22.) Despite the ALJ's explicit statement that Grubb had no independently severe psychological impairment, he implicitly found that her "mild anxiety/depression" was one of many impairments that, when considered together, were severe. That being the case, I find that Grubb's argument that the ALJ did not consider her impairments in combination is without merit.

However, having found that the ALJ did, in fact, consider Grubb's impairments in combination, the court now must determine whether his finding that she did not suffer from an independently severe mental impairment is supported by substantial evidence. For the following reasons, I find that it is not. Grubb argues that the ALJ failed to fully consider the findings of psychologists Nally and Smith in finding that she did not suffer from a severe mental impairment. (Plaintiff's Brief at 9-10.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit an individual's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2007). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2007). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724

F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

In an evaluation dated April 7, 2006, psychologists Nally and Smith noted that Grubb's mood was sad, and she reported chronic suicidal ideation with no intent. (R. at 242.) Nally and Smith noted that Grubb appeared to be honest about her psychiatric symptoms because her self-report was consistent with her presentation during the examination. (R. at 243.) Nally and Smith assessed a GAF score of 50 and diagnosed major depressive disorder, recurrent, moderate. (R. at 243.) Grubb's prognosis was rated as fair. (R. at 243.) Psychologists Nally and Smith concluded that Grubb was capable of performing detailed and complex tasks, as well as simple and repetitive tasks, accepting instructions from supervisors, interacting appropriately with co-workers and the public and performing work activities consistently as long as they did not worsen her pain. (R. at 243-44.) However, they opined that Grubb would have difficulty maintaining regular attendance and that her depression would make handling highly stressful work situations difficult. (R. at 244.) Later that same month, psychologists Nally and Smith completed a mental assessment, finding that Grubb was moderately limited in her abilities to perform activities within a schedule, maintain regular attendance and be punctual and to respond appropriately to work pressures in a usual work setting. (R. at 245-47.)

As evidenced by Nally's and Smith's treatment notes, Grubb's depression and anxiety resulted in more than a "minimal effect" on her work-related abilities because they found that she was moderately limited in two areas of work-related mental functioning. (R. at 245-47.) They also opined that she would have difficulty maintaining regular attendance and that her depression would make handling highly

-14-

stressful work situations difficult. (R. at 244.) Psychologists Nally and Smith assessed Grubb's GAF score at 50, indicating serious symptoms. (R. at 243.) They made no finding that Grubb was malingering or exaggerating her symptoms. In fact, they found that her subjective psychiatric allegations were consistent with her presentation during the examination. (R. at 243.) These findings are corroborated by the treatment notes from psychologist Heinbockel, the only other treatment notes from an acceptable medical source contained in the record. In April 2006, Grubb stated that she had suffered from depression since 2000 and that her condition had worsened since losing her job. (R. at 271.) She also complained of anxiety and auditory hallucinations. (R. at 271.) Heinbockel diagnosed Grubb with major depressive disorder, severe, with psychotic features. (R. at 272.) Lastly, in July 2006, Dr. Moore concluded that Grubb had severe obstructive sleep apnea, associated with moderate nocturnal hypoxemia, early rapid eye movement, ("REM"), latency, *often associated with significant depression*, and sleep onset and sleep maintenance insomnia. (R. at 296.)

For all of the above-stated reasons, I find that substantial evidence does not support the ALJ's weighing of the evidence with regard to psychologists Nally and Smith. Specifically, the ALJ appears to have relied primarily on the fact that Grubb had undergone no psychiatric evaluations prior to that performed by Nally and Smith in April 2006 and that she had been prescribed no medications to treat her depression. (R. at 26.) He further focused on only portions of Nally's and Smith's evaluation, notably failing to mention their findings that contradict his finding that Grubb did not suffer from a severe mental impairment. For instance, with regard to the psychological evaluation performed by Nally and Smith, the ALJ stated in his decision

as follows:

> The claimant was noted to present with adequate grooming and to evidence no difficulties with posture, gait or involuntary movements. The claimant related that she was seeking disability benefits because of her diabetes and hypertension but offered that she also had "depression and anxiety" and explained that she had no desire to leave her house.

(R. at 26.) The ALJ failed to note that Nally and Smith diagnosed Grubb with major depressive disorder, recurrent, moderate, or that they placed some moderate restrictions on her work-related mental abilities. The only other medical evidence contained in the record pertaining to Grubb's mental impairment is that from psychologist Heinbockel, which reveals a diagnosis of major depressive disorder, severe, with psychotic features. (R. at 272.) Again, the ALJ did not note this diagnosis in this decision. The ALJ's finding that Grubb did not suffer from a severe mental impairment was not based on the contradictory findings of any acceptable medical source, but on his observation that she had undergone no prior psychological treatment and his subjective opinion that Grubb simply was not motivated to obtain employment. (R. at 26.) The ALJ proceeded by stating that "[a]bsent any longitudinal evidence to clearly and adequately support the claimant's allegations of significant anxiety/depression/mental illness, the undersigned is unable to conclude that she has consistently demonstrated more than mild, if any, psychological work-related limitations." (R. at 27.) The court finds two problems with the ALJ's analysis of the severity of Grubb's mental impairments.

First, the ALJ, "[i]n the absence of any psychiatric or psychological evidence to support his position, ... simply does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained

professional." *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (citing *McLain*, 715 F.2d at 869; *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). The ALJ may not simply disregard uncontradicted expert opinions in favor of his own opinions on a subject that he is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984). Here, the ALJ rejected, or at the very least, partially rejected, the only evidence contained in the record as to the severity of Grubb's mental impairments and their effect on her work-related functioning submitted by acceptable medical sources. Without these expert opinions, the ALJ was left with no medical evidence to support his findings regarding the severity of Grubb's mental impairments. In effect, therefore, the ALJ improperly substituted his judgment for that of trained mental health professionals regarding the severity of Grubb's mental impairments.

Second, aside from his improper substitution of judgment, the ALJ, by his own words, stated in his opinion that there was insufficient evidence in the record to conclude that Grubb suffered from a severe mental impairment. As already stated, the court finds that substantial evidence does not support this finding. However, even if it did, the ALJ had a duty, at the very least, to order a consultative psychiatric or psychological evaluation. It is well-settled that the ALJ has a duty to help develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173-74 (4th Cir. 1986). In *Cook*, the court stated that " ... the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook*, 783 F.2d at 1173. If the ALJ felt as if a determination as to the severity of Grubb's mental impairment could not be made based on the record before him, as is evidenced by the

statements contained in his decision, then the proper action would have been to order a consultative psychiatric or psychological examination before rendering his decision.

*III. Conclusion*

For the foregoing reasons, Grubb's and the Commissioner's motions for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated and the case will be remanded to the ALJ for further consideration of the effects of Grubb's severe mental impairment on her work-related functioning.

An appropriate order will be entered.

DATED:    This 23rd day of May 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE